ARTHUR F. CAMPBELL *et al.*, Plaintiffs-Appellants, *v.* ELEANOR KACZMAREK *et al.*, Defendants-Appellees.

First District (5th Division)    No. 62239

Opinion filed June 11, 1976.

Andalman, Andalman & Cohen, of Chicago (Avrum N. Andalman and Arnold L. Cohen, of counsel), for appellants.

Frank E. Glowacki and Donald E. Arnell, both of Chicago Heights, for appellees.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order granting the section 72 petition of defendant Eleanor Kaczmarek (hereafter Kaczmarek) to vacate a default judgment entered some nine months prior thereto. On appeal, plaintiffs contend the petition should have been denied because of Kaczmarek's lack of diligence in presenting it.

Plaintiffs filed a three-count complaint against Kaczmarek and "John Doe." Count I alleged that Campbell was an officer of Thortronics and that while he was on corporate business on premises leased to Thortronics by Kaczmarek, she and her agent, known only as "John Doe," refused to allow Campbell to leave the premises until he gave her a check for rent owed by the corporation. The complaint alleged further that Campbell informed defendants that he was merely the agent for the corporation and was not personally liable for its rent and that, notwithstanding those facts, defendants held him against his will. Judgment in the amount of $500,000 was asked against both defendants by reason of the alleged false imprisonment.

Count II realleged that Campbell was an officer of Thortronics and was lawfully on the premises rented by it, and further asserted that "John Doe" made threatening gestures toward him so as to put him in fear for his safety. Campbell alleged further that said threats and gestures were without any reason for provocation and did, in fact, put him in fear for his safety. Judgment for $500,000 was asked in this count against "John Doe" only.

Count III involved a complaint by Thortronics for conversion of its property. It alleged an oral lease of certain premises from Kaczmarek, running from month-to-month, and that the rental had commenced in January, 1973, at a rate of $115 per month. It was further alleged that on January 1, 1974, without any notice to it, Kaczmarek had barred the door to said premises, preventing its agent or employee from entering, and that she has refused and still refuses to allow access. This count then asserts that she wilfully converted certain of its goods, wares and merchandise, and that she has moved and misplaced electronic equipment of a high value. It is then alleged that she refused to return the goods, wares and merchandise having a value of $250,000 and additional individual electronic components worth $25,000. Judgment in the sum of $275,000 was requested only against Kaczmarek.

Summons was personally served upon Kaczmarek and, when she failed to appear or answer, an order of default was signed. Subsequently, on May 20, 1974, an order was entered which, after reciting that sworn testimony was heard and that the court was fully advised in the premises, gave separate judgments against Kaczmarek as follows: (1) $1,250 to Campbell "for the false imprisonment, as alleged in Count 1"; (2) $1,250 to

Campbell "for the assault, as alleged in Count 2"; and (3) $75,000 to Thortronics "for the conversion, as set forth in Count 3." The judgment order further provided that the sheriff turn over to Thortronics possession of all merchandise belonging to it located on the subject premises. On June 13, 1974, the trial court entered an order directing the sheriff to enter the subject premises and obtain possession of all merchandise belonging to Thortronics, and on July 19, 1974, the sheriff presented Kaczmarek with this order and removed a number of items of personal property, which were turned over to Thortronics.

In January of 1975, Campbell filed garnishment proceedings against defendant's bank account and, thereafter, on March 4, 1975, Kaczmarek filed the instant section 72 petition to vacate the judgment order of May 20, 1974. In this petition, she stated that: upon being served with process, she turned over all of the papers she had received to an attorney, Donald Ross, who advised her "that he would check the matter and take care of it for her"; on June 19, 1974, the sheriff appeared at her premises with a court order, which was her first knowledge that any official action had been taken; it was her impression at the time that her attorney had agreed to the return of certain equipment on her property belonging to Thortronics; the only knowledge she had of a judgment entered against her "is when she became aware of a garnishment summons on her bank"; she had a good and meritorious defense in that Thortronics had entered into a month-to-month tenancy but had paid rent only for the months of June and July, 1973, and then had abandoned the premises until February 14, 1974, when "he"[1] returned and wanted to reenter the property; in the meantime, Thortronics had paid no rent and, being unaware of "his" whereabouts, she placed the equipment located on the property in boxes; and Campbell gave her two checks for $100, "which he instructed her not to cash because he had no money."

In their answer, plaintiffs stated that the petition showed on its face a lack of diligence and that consultation with an attorney was no defense thereto. On the question of diligence, they answered also that although Kaczmarek was served with summons on March 28, 1974, and had been served with a court order on June 19, 1974 (when the sheriff removed plaintiff's property), she took no action until the instant section 72 petition was filed on March 4, 1975.

The petition was denied on April 16, 1975, following which a motion to reconsider was filed. At the hearing on that motion, Kaczmarek admitted receiving a copy of the complaint and being served with summons. She told of the delivery of the papers to her attorney, who said he would take care of the matter. She also testified that in June of 1974, when the sheriff

---

[1] Thortronics, Inc., is the legal tenant of the premises, but apparently all of its business was conducted by Campbell.

removed the equipment, she again delivered the sheriff's papers to the attorney but that when she was served with the garnishment papers she was unable to contact that attorney and, instead, went to another lawyer. She had never signed any agreement with the first attorney nor did she pay him anything. She further testified that Thortronics had leased the premises for about a year before her husband's death and then moved out. They returned in May, 1973, on a month-to-month oral lease, paid rent through July, and then disappeared until February of 1974 when Campbell returned and said that he wanted to enter the premises—which had been locked by her. She asked him for some rent before she would allow entry. Campbell made a motion to leave, but her uncle who was there at the time stood in the doorway and demanded payment, telling Campbell he could not leave until he gave something. She testified that Campbell was kept there for an hour or an hour and a half, and he then gave two checks which he told her not to cash "because he had no money."

The court granted her section 72 petition and vacated its judgment order of May 20, 1974. This appeal is brought from that vacatur order.

Opinion

A petition to vacate a judgment under section 72 is addressed to the equitable powers of the court. (*Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 190 N.E.2d 348; *George F. Mueller & Sons, Inc. v. Ostrowski*, 19 Ill. App. 3d 973, 313 N.E.2d 684.) Upon review, this court is justified in disturbing the trial court's judgment only when its equitable discretion has been abused. *George F. Mueller & Sons, Inc.; City of Des Plaines v. Scientific Machinery Movers, Inc.*, 9 Ill. App. 3d 438, 292 N.E.2d 154.

■■ A section 72 petition, although filed in the original proceeding, is not a continuation thereof, but is the commencement of a new cause of action. (*Mutual National Bank v. Kedzierski*, 92 Ill. App. 2d 456, 236 N.E.2d 336.) As in any civil case, the petition must allege facts stating adequate grounds for relief. (*Smith v. Pappas*, 112 Ill. App. 2d 129, 251 N.E.2d 390.) Likewise, the failure of an opposing party to answer any allegations constitutes an admission of those facts well pleaded. *Windmon v. Banks*, 31 Ill. App. 3d 870, 335 N.E.2d 116; *Libert v. Turzynski*, 129 Ill. App. 2d 146, 262 N.E.2d 741.

■■ It is also well settled that a petitioner under section 72 must establish not only a meritorious defense to the cause alleged in the original action, but also that he exercise due diligence in presenting such defense. (*Esczuk v. Chicago Transit Authority*, 39 Ill. 2d 464, 236 N.E.2d 719; *Sora Loan Corp. v. Shlifka*, 2 Ill. App. 3d 137, 276 N.E.2d 85.) Since separate judgments were entered by the trial court here, we find it necessary to

address the propriety of the section 72 petition as to each count of the original complaint.

As to the first count for false imprisonment, we believe the petition and the facts adduced failed to allege or establish a meritorious defense to the claim. Although the assertion is made that petitioner had "a good, meritorious defense to this action" in that rent had not been paid, and although this allegation was not denied by plaintiffs in their answer, we are of the opinion that the allegations of the petition did not state nor did Kaczmarek's testimony establish a defense to the cause of action alleged in Count I.

■■ False imprisonment consists of the unlawful restraint of an individual's personal liberty or freedom of locomotion against his will. (*Shelton v. Barry*, 328 Ill. App. 497, 66 N.E.2d 697.) In order to constitute false imprisonment, there must be an actual or legal intent to restrain. (35 C.J.S. *False Imprisonment* §6 (1960); 19 Ill. L.&Pr. *False Imprisonment* §3 (1956).) However, malice is not an essential element of the charge. (*Lindquist v. Friedman's, Inc.*, 366 Ill. 232, 8 N.E.2d 625.) Thus, an unlawful detention is not made lawful because actuated by a laudable purpose or founded in good faith or in ignorance of the law. (35 C.J.S. *False Imprisonment* §7 (1960).) Nonetheless, for a person to be liable for a false imprisonment, it must appear that he personally participated therein by direct act or by indirect procurement. *Luker v. Nelson*, 341 F. Supp. 111 (N.D. Ill. 1972); 19 Ill. L.&Pr. *False Imprisonment* §6 (1956).

■■ Here, Kaczmarek testified that although Campbell wanted to leave the premises, her uncle said that he could not do so "until he gave us something" and she then stated that Campbell was kept there "for about an hour or hour and a half" until he gave some checks. We believe this testimony established that Campbell was unlawfully restrained against his will, and we note that the restraint by her uncle was performed in her presence and to coerce the payment of a debt owed her. Under these circumstances, we can only conclude that the uncle acted on her behalf and with her consent during the hour or hour and a half restraint. Thus, not only has petitioner failed to establish a good and meritorious defense but, through the agency of her uncle, she did in fact participate in the unlawful detention of Campbell. In view thereof, we are of the opinion that no meritorious defense has been established to the cause of action alleged in Count I.

■■ Furthermore, plaintiff was also required to show due diligence in presenting her defense. (*Esczuk.*) This she did not do. Her petition was filed on March 4, 1975, but it appears from the record that she was originally personally served with summons on March 28, 1974; that the default judgment was entered on May 20, 1974; that on June 19, 1974, the

sheriff personally served her with an order directing the delivery to him of Thortronics' property; that on January 22, 1975, a garnishment proceeding was instituted against her bank account, with a judgment entered against the bank on February 28, 1975. The only excuse she gives for the delay is that she brought all of the legal papers she received to an attorney and relied on him to take care of her defense. A section 72 petition is not intended to relieve a party from the consequences of her own mistake or negligence (*Brockmeyer v. Duncan*, 18 Ill. 2d 502, 165 N.E.2d 294) or that of her attorney (*Bartolini v. Popovitz*, 108 Ill. App. 2d 89, 246 N.E.2d 834). For the reasons stated, we hold that section 72 relief should not have been granted as to the award of $1,250 to Campbell for the "false imprisonment as alleged in Count 1."

■■ In the second count, it is alleged that "John Doe" assaulted Campbell and judgment is asked only against "John Doe." A default judgment must be based upon a complaint stating a cause of action. (*Roe v. Cook County*, 358 Ill. 568, 193 N.E. 472.) In this count, there is no allegation made against Kaczmarek, either directly or through the agency of another. Neither is a cause of action alleged or recovery sought against her. Thus, the award to Campbell for $1,250 "for the assault as alleged in Count 2" was improperly entered against Kaczmarek, and we affirm that part of the trial court's order vacating this separate judgment.

In Count III we note that petitioner alleged the existence of a good and meritorious defense to the action in that no rent was paid. This was apparently intended to allege a landlord's lien or a right of distress for rent. However, no written lease created any right of lien in favor of Kaczmarek, and the law is clear that there is no common law landlord's lien for rent. (*Powell v. Daily*, 163 Ill. 646, 45 N.E. 414; *First National Bank v. Adam*, 138 Ill. 483, 28 N.E. 955; *Herron v. Gill*, 112 Ill. 247.) Nor may Kaczmarek successfully contend she possessed a right to distrain for rent. While Illinois does recognize the common law right of a landlord to distrain property of a tenant for rent, that right has been substantially restricted by statute (Ill. Rev. Stat. 1973, ch. 80, par. 16 *et seq.*), the validity of which has most recently been upheld by our supreme court in *Vermoegensverwaltung v. Cousins Club, Inc.*, 64 Ill. 2d 11, 348 N.E.2d 831. Under the statute, distress proceedings are commenced by a seizure of the property and the immediate filing with the clerk of the circuit court of a copy of the distress warrant, together with an inventory of the property levied upon. (Ill. Rev. Stat. 1973, ch. 80, par. 17.) It would appear that no distress warrant or inventory was ever filed here. Thus, the issue presented concerns whether the mere allegation of past due rent is a sufficient defense to a cause of action for conversion.

■■ Such an issue was discussed in *Cottrell v. Gerson*, 296 Ill. App. 412, 16 N.E.2d 529, *aff'd*, 371 Ill. 174, 20 N.E.2d 74. There, the plaintiff

lessee brought a replevin suit against his landlord to recover certain barbershop furniture and fixtures allegedly seized unlawfully by the landlord for rent. The court stated the rule that at common law the landlord had no lien upon any property of his tenant as security for the rent. While acknowledging the landlord's common law right of distress, the court noted the statutory changes in that right which require judicial proceedings and concluded, at page 423, that:

> "No distress proceedings having ever been brought and perfected in this case, the defendant landlord had no lien on the property of his tenant here in question, either at common law or by virtue of any statute, and therefore had no right to take and detain it on that account."

Accordingly, the tenant's replevin action prevailed. Likewise, here, it appears that no proceeding in distress was commenced against the property. Therefore, we can only conclude that the assertion in defendant's petition that no rent was paid failed to state a meritorious defense to the cause of action for conversion alleged in Count III.

■■ We note, however, that the original judgment on the third count awarded damages for the value of the property and, in addition, ordered its return to Thortronics. Thereafter, pursuant to a further order of the trial court, the sheriff removed and returned to Thortronics all of its equipment found on the leased premises. Only an award of damages was sought in the complaint, and we are of the opinion that the judgment order granting both the property and damages for its value was clearly erroneous. (*Kern v. Woolsey*, 34 Ill. App. 551; 35 Ill. L.&Pr. *Trover & Conversion* §15 (1958).) As stated in 77 C.J.S. *Replevin* §239, at 170 (1952):

> "The judgment may not award a party double relief, such as judgment for a return or possession of the property, and, in addition thereto, a judgment for the value of the property * * *."
> (Footnotes omitted.)

Thus, it appears that the trial court was presented with a defense as to the issue of damages, and although defendant does not separate the issues of liability and damages in his petition or his brief, we will consider this proceeding to be in the nature of a bill of review to correct an error of law upon the face of the judgment order. (See *Jackson v. Jackson*, 144 Ill. 274, 280, 33 N.E. 51, 52.) As such, we believe the problem is analogous to that found in *Elfman v. Evanston Bus Co.*, wherein the supreme court held section 72 relief would lie as to the issue of damages only. In that case, a portion of the damages awarded in the original default decree was the result of unrelated medical expenses for a gall bladder operation. As the court in *Elfman* noted, at page 613, the section 72 petition "invokes the equitable powers of the court, as justice and fairness require, to the end

that one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstances." That court stated "in justice and fairness, defendant should be given the opportunity to appeal and defend on the issue of damages." Here, also, we believe defendant should be given a hearing on the question of the amount of damages to which plaintiff may be entitled by reason of the conversion.

The order appealed from which set aside the judgments entered May 20, 1974, on Counts I, II and III of plaintiffs' complaint is affirmed as to Count II but is reversed as to Counts I and III and remanded with the following directions: (1) to deny the section 72 petition as to the judgment on Count I; and (2) to deny the section 72 petition as to the finding of a conversion of Thortronics' property as set forth in Count III, but to grant the petition as to the award of $75,000 damages and to order a hearing on the issue of the damages which may have resulted from the conversion.

Affirmed in part, reversed in part, remanded with directions.

BARRETT and DRUCKER, JJ., concur.